THE CENTRAL NATIONAL BANK of Junction City, Kansas, *Appellant*, v. C. M. SHELDON *et al.*, *Appellees*.

No. 17,431.

SYLLABUS BY THE COURT.

1. CORPORATION—*Failure to Complete—Liability of Incorporators as Partners.* Without any statutory provision the law is that where a number of persons assume to organize themselves into a corporation and fail to take the steps which are essential to their becoming incorporate they are liable as partners for debts incurred by them in the corporate name.

2. ——— *Same.* Where a charter was regularly issued for a corporation under the laws of the territory of Arizona, but no meetings were called or held for the election of officers, and no books were opened and no capital stock was subscribed for or paid, *held,* that the organization was not completed, and that the incorporators were individually liable for debts incurred in the corporate name.

3. PROMISSORY NOTE—*Executed in Name of Pretended Corporation—Partnership—Estoppel.* The holder of a promissory note executed in the name of a pretended corporation by one who assumed to act as president thereof before the corporation was completed is not estopped from maintaining an action to recover the amount of the note against the incorporators by reason of having procured an adjudication by a referee in bankruptcy to the effect that the note is the note of the corporation and not that of the individual who signed it as president. The action to recover against the individual is not upon the note but is based upon the fraudulent acts of the incorporators.

4. ——— *Same.* The liability for debts incurred in the corporate name extends to all who participate in the enterprise, and is of the same nature as would be imposed if the original plan had been to form a partnership.

5. ——— *Same.* Persons who have held themselves out to the public as officers and directors of a corporation, and have executed a promissory note in the name of a pretended corporation for money borrowed in its name, are estopped to claim that the corporation was not duly incorporated or that it exceeded its authority in borrowing the money.

Appeal from Wyandotte district court. Opinion filed February 10, 1912. Reversed.

## STATEMENT.

The bank sued C. M. Sheldon and C. K. Bowen to recover the amount due on a promissory note for $4500 payable to the bank's order, executed June 5, 1905, by The C. M. Sheldon Company. The petition alleged that in 1904 the defendants signed and acknowledged articles of incorporation of The C. M. Sheldon Company under the laws of the territory of Arizona for the purposes of gain, filed the same with the proper officers of said territory as provided by the laws thereof, obtained a corporate charter for said company and thereupon maintained an office at Kansas City, Missouri, at which they assumed to transact business in the name of The C. M. Sheldon Company; that no books of the corporation were ever opened for the purpose of receiving subscriptions to the capital stock, nor was any subscription ever made or money paid thereon; that no stock was issued, no by-laws or rules adopted for the government of the corporation, no meetings were called or held for the election of officers or directors, and that no other steps were taken to complete the organization; and that there was an entire failure to comply with the laws for the government of corporations; that the defendants assumed to act as such corporation, and that the defendant C. M. Sheldon, with the knowledge and consent of the defendant Bowen, assumed to be and did act and hold himself out to the public as president of said pretended corporation. The petition then alleged that C. M. Sheldon, pretending to act for and in the name of such corporation, obtained a loan from plaintiff of the sum of $4500, and executed therefor a promissory note, signing the same "The C. M. Sheldon Company, by C. M. Sheldon, President"; that in procuring the loan he represented to the bank that the company was duly incorporated and authorized to transact business as a corporation and that he was its president and authorized to obtain the loan and execute the company's

note; that the bank believed and relied upon such representations and by reason thereof made the loan and accepted the note. The petition further alleged that the defendant Bowen knew all the facts and the representations made by C. M. Sheldon; that the note remained due and unpaid except for a credit of $100 realized upon the sale of certain collateral securities. The prayer was for judgment against the defendants for the amount due upon the note.

The answer of C. M. Sheldon admitted the facts alleged with respect to obtaining the charter of the company, that no books were opened for subscriptions to capital stock, that no stock was subscribed or issued, and that no meetings were held or officers elected. He also admitted the execution and delivery of the note and denied the other averments of the petition. He expressly denied that the note was executed by the corporation. He alleged, on the contrary, that one S. W. Pierce was president of the bank at the time the loan was obtained and as such president agreed with Sheldon that the latter should transact business in the name of The C. M. Sheldon Company for his individual benefit; that this arrangement was entered into prior to any atempt to obtain a charter for or the incorporation of the company, and that the note in question was executed by C. M. Sheldon under this arrangement with full knowledge on the part of the bank that The C. M. Sheldon Company was not incorporated. The answer further alleged that the bank through its president knew or was in law bound to know that the power of The C. M. Sheldon Company to contract indebtedness was limited to the sum of $65 and that it had no power to execute a note for $4500. As a further defense the answer alleged that in June, 1905, the defendant Sheldon was adjudged a bankrupt upon his own petition; that in the bankruptcy proceedings he filed a motion for leave to schedule the note in question as his individual indebtedness and that the plaintiff appeared

and objected thereto, claiming and asserting that said note did not evidence any individual liability of C. M. Sheldon but was a liability incurred by an incorporated company; that plaintiff's contention was sustained, and it was so adjudged and thereby became *res judicata*. that The C. M. Sheldon Company was duly incorporated and duly authorized to incur and that it did incur the indebtedness upon the note and that the note was the debt of the corporation alone.

Defendant C. K. Bowen answered, alleging the adjudication in the bankruptcy proceedings and pleading an estoppel on the part of the plaintiff to claim that the note in question was a personal indebtedness of C. K. Bowen and not the debt of the company. He also set up a counterclaim for the alleged wrongful conversion by the bank of certain shares of oil stock belonging to him which were attached to the note as collateral security and which he alleged the bank sold and disposed of without authority.

There was a jury trial. The plaintiff offered evidence in support of its claim. The defendants proved the laws of the territory of Arizona as to the granting of charters to corporations, the bankruptcy proceeding, including the order denying the application of C. M. Sheldon for leave to schedule the note as an individual indebtedness and adjudging it to be the debt of the company; and also offered evidence to show that when the loan was made the bank had notice and knowledge of the fact that the company was not lawfully organized.

The testimony offered by the plaintiff contradicted that of the defendants and tended to show that the bank had no notice or knowledge of the facts concerning the failure of the defendants to comply with the law, and, in fact, that it relied upon the representation of C. M. Sheldon that the company was duly organized and made the loan to the company and took what purported to be the note of the company in good faith.

At the conclusion of the evidence the court directed a verdict for the defendants and gave judgment in their favor for costs. The plaintiff appeals.

*Junius W. Jenkins,* for the appellant.
*William Needles,* and *A. L. Berger,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: In directing a verdict the court seems to have proceeded upon the theory that the plaintiff was estopped by the proceedings before the referee in bankruptcy from now asserting a claim against Sheldon for an individual liability upon the indebtedness after contending there that the note was the obligation of the company and not that of Sheldon individually, and after procuring an adjudication to that effect. There is nothing inconsistent in the claim now made by the plaintiff and that asserted before the referee. The plaintiff is not seeking to recover upon the note nor upon the theory that it is the individual note of C. M. Sheldon. The bank merely pleads the facts under which it was induced to make the loan to the defendants and to accept as evidence of the indebtedness what purported to be the note of the company. By reason of the other facts alleged, and abundantly sustained by the proof, as well as by the admissions of defendants, it is shown that the pretended company was never lawfully incorporated. It appears to have been a mere sham, a company on paper. The law is well settled that in such cases those persons who hold themselves out to the public as officers of a corporation, and assume to act in a corporate capacity, are individually liable for debts incurred by them in the name and pretended authority of such corporation before the organization is completed. (*Walton v. Oliver,* 49 Kan. 107, 30 Pac. 172; *Hurt v. Salisbury, et al.,* 55 Mo. 310; *Kaiser v. Lawrence Savings Bank,* 56 Iowa, 104, 8 N. W. 772; *Wechselberg v. Flour City Nat. Bank,* 64 Fed. 90; 1

Purdy's Beach on Private Corp. § 131; 3 Thomp. Com. on the Law of Corp. § 2992.)

The charter of the company was issued August 23, 1904. The note was executed by C. M. Sheldon in the name of The C. M. Sheldon Company on June 5, 1905. Ten days after he had obtained from the bank the money on the note he was adjudged a bankrupt on his voluntary petition.

The appellees contend, first, that their evidence established that all the requirements of the laws of the territory of Arizona were fully complied with in obtaining the charter; that the company was empowered to transact business under the laws of that territory, and there was not, therefore, such a failure to incorporate as to bring the case within the doctrine of *Walton v. Oliver*, 49 Kan. 107, 30 Pac. 172. In other words, that there must be an entire failure upon the part of the incorporators to comply with the provisions of the law for the government of corporations before the individuals can be held personally liable for debts incurred in the company's name.

It is not every irregularity in the proceedings that will render the incorporation ineffectual or cast upon the individuals the burden of liability for debts incurred in the name of the company. Where the incorporators have acted in entire good faith, supposing that they are legally incorporated, and there has been a substantial compliance with the provisions of the law respecting the formation of such corporations, and especially where business has been carried on in the name of the corporation for a considerable time, the individuals can not be held liable. (*Gartside Coal Co. v. Maxwell*, 28 Fed. 187.) Such, at least, is the modern rule (1 Purdy's Beach on Private Corp. § 131), although there is some conflict in the authorities (*Doty v. Patterson*, 155 Ind. 60, 56 N. E. 668). In some states the situation is met by statutory provisions imposing upon

the incorporators a liability as partners where the incorporation has not been made in compliance with law.

"Outside of the question of the existence of such statutes, and chiefly in jurisdictions where they do not exist, there is a class of cases holding to the simple, just and easily applied doctrine that where a number of coadventurers assume or attempt, under the provisions of a general statute, to organize themselves into a corporation, and fail to take the steps which that statute makes essential to their becoming incorporate, and assume to contract corporate debts without having taken such steps, they are liable for such debts as partners." (3 Thomp. Com. on the Law of Corp. § 2992.)

The present case can not readily be distinguished from that of *Walton v. Oliver*, 49 Kan. 107, 30 Pac. 172, where the charter naming the directors for the first year was duly acknowledged and filed in the office of the secretary of state, but no corporate stock was subscribed or paid. The persons assuming to act as directors were held personally liable for debts incurred before the organization was completed. In the opinion it was said:

"We do not understand that a corporation can proceed to the transaction of business without any portion of its capital stock being subscribed or paid." (p. 113.)

It is the contention of defendant Bowen that no liability attaches to him because the proof does not show that he knew of the execution of the note, and he testified that he had no knowledge of the transaction. He gave the use of his name as one of the incorporators of the pretended company. It required his participation in the enterprise to obtain even the semblance of corporate existence, and as held in *Fredendall v. Taylor and others, impleaded, etc.*, 26 Wis. 286, 19 N. W. 911, the liability of all the parties to the assumption of corporate power springs "from the fact that there was no responsible body or corporation behind them which they could bind, and against which the plaintiff could have had his remedy." (p. 290.) "Having no prin-

Bank v. Sheldon.

cipal, they bound themselves individually." (*Wechsel-berg v. Flour City Nat. Bank,* 64 Fed. 90, 97.)   A similar contention was urged in the case last cited, but the liability of all the signers of the articles of incorporation was said to be "of the same nature which would be imposed if the original plan had been to form a partnership."   (p. 97.)   That case differs from this only because a statute of Wisconsin provided that no corporation should transact business with any other than its members until a certain percentage of its stock should be subscribed and paid, and imposed a liability upon the stockholders for debts incurred in violation of the provision.   We think, however, that the same rule should be applied irrespective of statutory provisions.   (3 Thomp. Com. on the Law of Corp. § 2992.)

It is true the defendants offered proof to show that the bank extended the credit solely to C. M. Sheldon personally, and knew that no *bona fide* attempt to incorporate had been made.   But there was a conflict in the evidence upon this issue and the court could not direct a verdict.   Besides, the defendants, who held themselves out to the public as officers and directors of the corporation, and who executed the note in the company's name, are estopped to claim that the company was not in fact duly incorporated, or that it exceeded its authority in borrowing the money.   (*Aultman v. Waddle,* 40 Kan. 195, 19 Pac. 730; *Marshall Foundry Co. v. Killian,* 99 N. C. 501, 6 S. E. 680, 6 Am. St. Rep. 539.)

The court erred in directing a verdict and the judgment is reversed and a new trial ordered.