In the Matter of the Estate of George Dewey Jensik, Deceased.
Ellen M. Enoch and David W. Enoch, Claimants-Appellees, v. Blanche Peeke, Administratrix of the Estate of George Dewey Jensik, Deceased, Defendant-Appellant.

Gen. No. 48,481.

First District, Second Division.

February 23, 1962.

Rehearing denied March 20, 1962.

131

Hugh M. Matchett, Falkenberg & Falkenberg, and J. Riegle, all of Chicago, for appellant.

Sidley, Austin, Burgess & Smith, all of Chicago (Alice M. Bright and George W. McBurney, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court:

The Administratrix of the Estate of George Dewey Jensik, Deceased, appeals from an order allowing the claim of Ellen M. Enoch and David W. Enoch in the amount of $17,750. No evidence was heard. The facts appear in the verified claim and claimants' answers to interrogatories, none of which allegations or answers are controverted by any pleadings or other documents. All of the allegations of fact in the verified claim are admitted by the administratrix by her failure to deny them in her answer or amendment thereto.

George Dewey Jensik, the decedent, was one of the incorporators, a director and secretary-treasurer of

Alcore Homes Incorporated, a Kansas corporation. All three incorporators, Glen C. Martin, Guy J. Maresca and George Dewey Jensik, were residents of Illinois. The Articles of Incorporation were filed in the office of the Secretary of the State of Kansas on November 4, 1957. The resident agent of the corporation in Kansas was Prentice-Hall Corporation System and the registered office was in the Columbian Building, Shawnee County, Kansas. Early in 1958 a lease was executed on behalf of the corporation as lessee by Glen C. Martin, president, and the decedent, George Dewey Jensik, secretary, and Ellen M. Enoch and David W. Enoch as lessors, to certain real estate in Wichita, Sedgwick County, Kansas. In the transaction involving the execution of the lease the corporation was represented by counsel. The lease bears the date of January 27, 1958. It was executed by the various parties thereto some time during the period from February 1 to February 20, 1958. The lessee agreed to pay $57,000 as rental for the premises for the period from February 1, 1958 through January 1, 1963, at the rate of $950 per month in advance. The first payment became due February 1, 1958. The first month's rent was paid. No further payments were made. Claimants made extensive efforts to lease the premises to others in order to mitigate their damages, but were unable to do so, except as to one small room in the east end of the building which was rented from April 1, 1959 to March 1, 1960 at the rate of $50 per month. An affidavit stating that the amount of capital had been fully paid in was not filed with the Register of Deeds of Shawnee County, Kansas.

■■ The administratrix maintains that the allowance of the claim under the summary judgment procedure cannot stand because it is based on Secs 35, 40 and 57 of the Civil Practice Act, which are not applicable to the filing of, objection to and proof of claim

in the Probate Court. Section 5 of the Probate Act provides that the provisions of the Civil Practice Act and the rules adopted pursuant thereto apply to all proceedings under the Probate Act, unless otherwise provided by the latter Act. In re Estate of Brauns, 330 Ill App 322, 324, 325, 71 NE2d 364; In re Estate of Schafer, 344 Ill App 608, 613, 101 NE2d 853. Summary judgment procedure is an important tool in the administration of justice. Its use in a proper case, wherein is presented no genuine issue as to any material fact, is to be encouraged. Allen v. Meyer, 14 Ill2d 284, 292, 152 NE2d 576. The use of summary judgment procedure in the Probate Court where there is no genuine issue as to any material fact should be encouraged.

The administratrix asserts that the claim is to recover a statutory penalty created by the State of Kansas that did not survive the death of the decedent, is unenforceable and is a type of claim of which the Probate Court has no jurisdiction, citing Diversey v. Smith, 103 Ill 378; Gridley v. Barnes, 103 Ill 211; M. H. Vestal Co. v. Robertson, 277 Ill 425, 115 NE 629; Crouch v. Gray, 154 Tenn 521, 290 SW 391; and other cases. The statute relied upon is set out in the claim. The essential parts read:

"17–2806 . . . A. A corporation formed under this act shall not incur any debts or begin the transaction of any business, except such as is incidental to its organization . . . until: . . . (2) The amount of capital with which it will begin business, as stated in the articles of incorporation shall have been fully paid in; and (3) there shall have been filed in the office of the register of deeds of the county where the registered office of said corporation is located, an affidavit signed by the treasurer of the corporation stating that the amount of capital which the articles of incorporation state will be paid in before the corporation will commence business, has been fully paid in. B. If a

corporation has transacted any business in violation of this section, the officers who participated therein and the directors, except those who ·dissented therefrom . . . , shall be severally liable for the debts or liabilities of the corporation arising therefrom."

■ We are convinced that the decision of this case must be governed by Kansas law. The lease involves Kansas real estate. The corporation and organization was not completed as a Kansas corporation. Decedent went into that state to do business and sought to immunize himself against personal liability for obligations contracted in connection with that business by forming a Kansas corporation. Whether he succeeded in escaping personal liability must be determined by Kansas law. The decedent and his associates, Glen C. Martin and Guy J. Maresca, all residents of Illinois, went into Kansas for the purpose of conducting business operations. They took the initial steps necessary to form a corporation. Among other things, they entered into a lease for Kansas real estate owned by appellees. They are personally liable for the obligation undertaken by them in the lease unless they can establish that they have immunized themselves against personal liability by forming a corporation in compliance with Kansas law. They did not comply with the requirement of Sec 17–2806 of the Kansas statute establishing the conditions precedent for the transaction of business as a corporation. Decedent's affidavit as treasurer was never filed with the Register of Deeds of Shawnee County. A reasonable inference from the failure to file the affidavit is that the required capital was never paid into the corporation, and that therefore no such affidavit could be made or filed.

Before the statutory enactment in Kansas the liabilities declared therein were imposed at common law on incorporators, directors and officers who incurred

136

obligations in the name of the corporation before the condition precedent to its doing business had been met. Under the Kansas decisions decedent's liability rests on a contractual basis. Hall Lithographing Co. v. Crist, 160 P 198 (Kan 1916); Weber Engine Co. v. Alter, 245 P 143 (Kan 1926); Walton v. Oliver, 30 P 172 (Kan 1892); Central Nat. Bank v. Sheldon, 121 P 340 (Kan 1912); Wechselberg v. Flour City Nat. Bank, 64 Fed 90 (CCA 7, 1894); Thompson on Corporations, 3rd (1927) Vol 6, Sec 4742, pp 638–639.

██ Our Supreme Court has decided that in cases such as this it will comply with the law of the state of incorporation in determining the nature of the liability and will enforce the liability in Illinois. In Bigelow v. Gregory, 73 Ill 197, the defendants were incorporators of a Wisconsin corporation. Plaintiff brought an action in assumpsit in Illinois against the incorporators to recover for goods sold and delivered. The Wisconsin statute made both the publication of the articles and the filing of the certificate conditions precedent for doing business as a corporation. The Wisconsin statute was very similar to the statute later adopted in Kansas and cited in the instant case. In the Bigelow case the incorporators sought to avoid personal liability for debts contracted in the name of the corporation. Our Supreme Court rejected this defense, saying (202): "We are of the opinion that the defendants were liable as partners, and had not absolved themselves from responsibility as such by having become a corporation." Decedent and his associates went into Kansas to conduct a business enterprise. In attempting to form a corporation they did not comply with the requirements of the Kansas statute which would have enabled them to obtain individual immunity. Under Kansas law decedent and his associates remain personally liable for the obligations contracted in the name of the corporation. Un-

137

der Kansas law this is a contractual liability imposed on all who participated in the common enterprise. Illinois will enforce that contractual liability in accordance with the law of Kansas. If decedent obtained any immunity from personal liability for debts contracted in this enterprise, it was only under the Kansas corporation law. If residents of Illinois may avoid contractual obligations incurred in Kansas simply by returning to Illinois and persuading a court in Illinois to repudiate Kansas law and substitute its own construction of its own corporate statutes, modern-day commercial dealings would become impossible and no creditor could safely contract outside the jurisdiction in which his debtors reside. Decedent became personally liable under the Kansas law and that liability will be enforced in Illinois.

■ We are of the opinion that the claim is one to enforce contractual liability of the decedent and within the jurisdiction of the Probate Court. The Kansas statutes are not penal, but declare and modify the common-law contractual liability of participants in a common enterprise. Far from imposing a penalty in derogation of the common law, Sec 17–2806B offered an officer and director an opportunity to escape from the common-law contractual liability hitherto imposed on all officers of a corporation by permitting an officer to prove non-participation and a director to record his dissent from an obligation incurred before the organization of the corporation had been completed and thereby avoid personal liability. At common law the courts of Kansas hold all who participated in the common enterprise liable for the obligations incurred in the name of the corporation before organization had been completed. Hall Lithographing Co. v. Crist, supra. Under Sec 17–2806B the Kansas legislature modified the common-law rule by restricting the liability of officers to those who participated in the trans-

action of the business and by permitting a director to record his dissent to the transaction of business before complete organization and thereby escape liability. It is a remedial and not a penal statute. Kansas decisions adhere to the majority rule that such statutes are not penal but merely state a contractual obligation. In Diversey v. Smith, 103 Ill 378, strongly relied upon by the administratrix, the action was against stockholders to enforce a liability imposed by the statute against them to the extent of the stock subscribed by them for obligations incurred in violation of the statute. The court determined that under the statute the debts and responsibilities were the primary obligation of the company and the stockholders were held liable not because of their debt, but solely on account of the debt of the company. The court also found the statute to be in derogation of the common law. The Kansas statutes are declaratory of the primary common-law liability recognized and enforced in Kansas before their adoption. The Kansas statutes do not attempt to impose a liability of the corporation on its stockholders. They recognize and enforce the primary liability of joint venturers or partners for their obligations where such persons have failed to establish their immunity from liability by perfecting incorporation. In the Diversey case there was no question of the law of another state, nor any suggestion that the Illinois courts would ignore the law of another state and construe the statutes of another state as penal in violation of a long-established, contrary construction by the state involved. This matter is controlled by Kansas law and we must look to the Kansas cases to determine the proper construction of the Kansas statutes. Under the Kansas cases the claim involved is upon a common-law contractual liability which exists in Kansas independently of the statutes and survives as an action ex contractu.

■ ■ Appellant says that the action is so unenforceable and unjust that it should be dismissed for want of equity without further expense to the estate. This is not a claim to enforce an equitable remedy, but to enforce a common-law contractual liability. Claimants dealt in good faith with the decedent and his associates. The latter voluntarily went into Kansas to conduct a business enterprise for profit. They negotiated a lease for claimants' Kansas real estate. They were represented by competent counsel. The burden was on the administratrix to establish decedent's immunity from personal liability. Bigelow v. Gregory, supra. The administratrix has no just complaint because Mr. and Mrs. Enoch press their claim against the estate. The law is clear that the obligations under the lease are the joint and several liabilities of the partners.

■ The administratrix asserts that the lease was either stillborn or terminated before or on March· 1, 1958, by its own terms by reason of the insolvency of the corporation and the provisions of Section IX of the lease, discharging the corporation from any further liability under the lease, and discharging the deceased from any possible statutory liability predicated upon it. Here the appellant raises an affirmative defense not pleaded or raised in the trial court. The argument that the lease terminated because of the insolvency of the corporation is based upon deductions from a document not in evidence, which the administratrix refused to admit was genuine. The argument also ignores Kansas law which made the lease as much decedent's primary obligation as if he had executed it in his own name.

■ The administratrix insists that the summary judgment proceedings violates Sec 2 of the Evidence Act and Supreme Court Rule 15 in that it is based on statements of purported fact made by plaintiffs in their own affidavits to which neither, if sworn as a

witness, could competently testify. Claimants filed no affidavits in support of their motion for summary judgment. Therefore Supreme Court Rule 15 has no application. Section 196 of the Probate Act requires that a verified claim be filed by every claimant. Section 2 of the Evidence Act purports to apply to testimony and not to pleadings. The administratrix admitted all material facts pleaded in the claim by her failure to deny them in her answer. No testimony was necessary to support the allegations of fact in the claim. There is no merit in appellant's contention. The administratrix states that the order allowing the claim cannot stand because she has stated in her pleadings that she has no knowledge of certain allegations in the statement of claim, and that she has no knowledge thereof sufficient to form a belief, and has attached an affidavit of truth of the statement of want of knowledge. The facts set forth in the verified claim were admitted. Claimants then filed a motion for an order under the summary judgment procedure of Sec 57 of the Civil Practice Act. The administratrix had the right to file counter-affidavits. No affidavits were filed by claimants. The administratrix filed a document purporting to be an affidavit which was stricken for failure to conform to Rule 15 of the Supreme Court. The administratrix also filed a motion in opposition to the motion for summary judgment in which she stated that she had denied knowledge of or information sufficient to form a belief of the correctness of any allegation in the claim. She had not in her answer denied knowledge of or information sufficient to form a belief. The trial judge was right in ignoring the assertion and in determining that the pleadings showed that there was no general issue as to any material fact.

■■ ■■ The administratrix argues that the Probate Court had no jurisdiction of the claim because liability under the lease is contingent and for an un-

liquidated amount, citing Beebe v. Kirkpatrick, 321 Ill 612, 152 NE 539 and Foreman State Trust & Savings Bank v. Tauber, 348 Ill 280, 180 NE 827. In Chicago Title & Trust Co. v. Fine Arts Bldg., 288 Ill 142–156, 123 NE 300, the court upheld the allowance of a claim for rent due through the period of administration, while holding that a claim for the balance of the term beyond the period of administration was contingent. In Mackin v. Haven, 187 Ill 480, 494, 58 NE 448, the lessor was allowed to recover in the Probate Court for rent accruing during the period of administration but not for the balance of the term after the period. The cases cited by the administratrix do not support her contention. In the Tauber case the court pointed out that the claim must remain contingent during the whole period of administration to be denied allowance against decedent's estate. In the Beebe case the payee of a promissory note guaranteed by decedent brought suit against decedent's heirs to enforce payment. The notes were not due at the date of decedent's death. The holding in the case does not support the administratrix's position. The contingencies mentioned by the Supreme Court in the Chicago Title & Trust Co. case did not occur during the period of administration. In the case at bar the claim for rental through September, 1959, became absolute during the period of administration. None of the contingencies which might have terminated liability under the lease occurred during the period of administration. The liability for rental was absolute when it was presented to the Probate Court. We think that the Probate Court had jurisdiction to allow the claim for $17,750. The administratrix says that the order entered under summary judgment procedure cannot stand because there are many issues of fact to be decided, especially, whether claimants have made a reasonable and diligent effort to mitigate their damages as required by Kansas law. The administratrix

admitted all the material facts by her failure to deny them in her answer and amendment thereto. She asserts that perhaps the building had been destroyed, or that there had been an undisclosed written termination of the lease, or that there had been insolvency or bankruptcy proceedings. These were all affirmative defenses which she was free to plead if she desired to do so and could find evidence to support them. She asks us to disregard the uncontradicted evidence and assume that the listing of the property with various reputable realtors in Wichita was not a sufficient effort by claimants to mitigate their damages. She had from August 11, 1959 to January 17, 1961, to investigate this matter. From October 5, 1960 to January 17, 1961, she had available to her the names and addresses of the brokers with whom the property had been listed and the other details of claimants' efforts to re-lease the property. She made no effort to contradict claimants' statements relating to their efforts to re-lease except to suggest in a document entitled an affidavit and stricken by the court that she had hired a lawyer in Emporia to investigate the real estate market in Wichita, but that he had gone away somewhere and had not reported to her. She offered no contradictions of the facts and the court properly concluded that the facts established a reasonable effort to mitigate the damages as required by the Kansas cases.

■■■ The administratrix argues that the claim should not have been allowed because no judgment has been obtained against the corporation and execution issued and returned nulla bona as required by Sec 17–4009 of the Kansas statutes. Where the organization of the corporation is not completed, as in this case, the liability for obligations under the Kansas law is a personal liability of the incorporators, officers and directors. Neither Sec 17–2806B (declaring in a modified form the common-law contractual liability

of officers and directors) or Sec 17–2807 (declaring the common-law liability of incorporators) requires the claimants to go through what would be the obviously futile act of first suing the corporation, obtaining a judgment and having an execution issued and returned nulla bona. Section 17–4009 refers only to directors and stockholders. It has nothing whatsoever to do with actions against officers and incorporators. The two cases relied upon by the administratrix, Valley Bank v. Ladies Congregational Sewing Society, 28 Kan 423; and Carey Lumber Co. v. Neal, 3 Kan App 399, 42 P 925, make it clear that Sec 17–4009 pertains only to situations where the corporate organization has been completed and the liability of a director because of an illegal dividend or the super-added liability of a stockholder is being enforced. Section 17–4009 of the Kansas statutes has no application to the situation here.

Finally the administratrix says that the claim should not have been sustained because the deceased did not participate in the execution of the lease. In her answer the administratrix did not deny the participation of the decedent in the execution of the lease. He signed the lease. Section 17–2806B holds an officer liable who participated in the transaction of business. There is nothing to indicate that decedent was unaware of the contents of the lease or disapproved the transaction. Decedent was also liable as a director and an incorporator irrespective of his status as secretary-treasurer and whether his signing of the lease constituted participation in the lease transaction.

For the reasons stated the order allowing the claim is affirmed.

Order affirmed.

FRIEND, P. J. and BRYANT, J., concur.